# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PETER J. HANSON,**

    Petitioner,

    v.                                     Case No. 20-CV-45

**BRIAN FOSTER,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Peter J. Hanson, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hanson was convicted of first-degree intentional homicide and is serving a life sentence. Hanson alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Hanson challenges his judgment of conviction for first-degree intentional homicide, as party to a crime, in Oconto County Circuit Court. (Answer to Habeas Petition ("Answer"), Ex. 1, Docket #12-1 at 1.) Hanson's charges arose from the death of Chad McLean, who disappeared on the night of February 22, 1998. (*State of Wisconsin v. Hanson*, No. 2016AP2058 (Wis. S. Ct. June 5, 2019), Answer, Ex. 12, Docket # 12-12.) Earlier that day, McLean and his friend, Cory Byng, went to Byng's uncle's house for a cookout. (*Id.* ¶ 5.) Hanson and his friend, Chuck Mlados, also went to the cookout, arriving in a pickup truck driven by Hanson. (*Id.*) Around 9:30 or 10:00 p.m., Hanson, McLean, and Mlados left

the cookout. (*Id.*) Hanson and Mlados alleged that they dropped McLean off at the Hi-Way Restaurant and Truck Stop on the way back to Hanson's house. (*Id.*) The restaurant's surveillance footage from that night showed Hanson and Mlados buying beer at 9:53 p.m., but McLean was not seen in any of the footage. (*Id.*) At trial, six employees testified that they did not see anyone fitting McLean's description at the restaurant that night. (*Id.*)

Approximately one month later, McLean's body was recovered in the Pensaukee River, 1.3 miles downstream from Hanson's house. (*Id.* ¶ 6.) McLean had four gunshot wounds to the head. (*Id.*) The case went cold for over a decade until 2009, when Hanson's estranged wife, Kathy Hanson, told police that Hanson had confessed to killing McLean. (*Id.*) In November 2012, a judge in Oconto County held a John Doe proceeding to further investigate McLean's murder. (*Id.* ¶ 2.) At this time, Hanson was in custody at the Oconto County Jail on unrelated charges. (*Id.* ¶ 7.) Hanson was called as a witness to testify at the John Doe proceedings regarding McLean's murder. (*Id.*) Prior to questioning, the John Doe judge read Hanson most, but not all, of the *Miranda v. Arizona*, 384 U.S. 436 (1966) warnings. (*Id.*) Specifically, the judge failed to inform Hanson of his right to have counsel appointed if he could not afford to hire his own counsel. (*Id.* ¶ 7 n.5.) Hanson made incriminating statements at the proceedings. (*Id.*) In March 2013, the John Doe investigation was closed and the John Doe judge signed an order finding probable cause and authorizing the issuance of a criminal complaint. (*Id.*)

At trial, the State introduced portions of Hanson's John Doe testimony. (*Id.* ¶ 8.) Hanson objected on Confrontation Clause and hearsay grounds. (*Id.*) The trial court

overruled Hanson's objections and held that the testimony qualified as an admission by a party opponent pursuant to Wis. Stat. § 908.01(4)(b)1 and therefore was not hearsay and did not violate his Sixth Amendment right to confrontation. (*Id.*)

The jury also heard from three witnesses who testified that Hanson had confessed to killing McLean. (*Id.* ¶ 9.) At trial, Kenneth Hudson testified that he had been Hanson's best friend and that about a month and a half after McLean's body was found, Hanson told him that he had shot McLean and dumped his body in the river. (*Id.*) Additionally, Hanson's friend, Barry O'Connor, testified that in 2008, Hanson told him that ten years earlier he and Mlados had accidentally killed someone and dumped the body in the river. (*Id.*) O'Connor testified that Hanson told him that he had confessed the murder to Kathy, but that she could not testify against him because she was now dead. (*Id.*) Finally, Jeremy Dey testified that while he and Hanson were in the Oconto County Jail together in 2013, Hanson told him that he had shot McLean and dumped his body in a river. (*Id.*) Dey further testified that Hanson told him that Kathy had given the police a statement about McLean's murder that was against Hanson's interests. (*Id.*)

Hanson's wife, Kathy, had died prior to the John Doe proceedings. (*Id.* ¶ 8 n.6.) During deliberations, the jury asked the court if it could review "anything that may pertain to Kathy Hanson's statement to the police." (*Id.* ¶ 11.) The court denied the request. (*Id.*) The jury ultimately found Hanson guilty of first-degree intentional homicide as a party to the crime, and he was sentenced to life imprisonment without the possibility of parole. (*Id.*)

3

Hanson filed a postconviction motion seeking a new trial based upon, among other things, the alleged ineffective assistance of trial counsel for failing to object to the admission of Hanson's John Doe testimony on *Miranda* grounds and a violation of his right to confrontation under the Sixth Amendment. (*Id.* ¶¶ 12–13.) The trial court held a "*Machner*" hearing on Hanson's ineffective assistance of counsel claim. At the *Machner* hearing, trial counsel testified that he did not object to the admission of Hanson's John Doe testimony on *Miranda* grounds because he did not believe that *Miranda* was applicable to a John Doe proceeding. (*Id.*) The circuit court denied Hanson's postconviction motion. (*Id.*)

Hanson appealed the denial of his postconviction motion. (*Id.* ¶ 13.) He raised two issues on appeal: (1) whether the circuit court improperly admitted Hanson's John Doe testimony regarding Kathy's statement to police in violation of his Sixth Amendment right to confrontation and (2) whether trial counsel was ineffective for failing to call any potentially exculpatory witnesses and for failing to object to the admission of his John Doe testimony on the grounds that he was not read all of his *Miranda* warnings at the John Doe proceeding. (*Id.*) As to Hanson's Confrontation Clause claim, the court of appeals assumed without deciding that the circuit court's admission of Hanson's John Doe testimony was error; however, the court of appeals found that the error was harmless because it duplicated other, unchallenged testimony. (*Id.* ¶ 14.) The court of appeals also rejected Hanson's *Miranda* claim, again finding that even if trial counsel erred, the error was not prejudicial because the challenged statement duplicated other, unchallenged testimony. (*Id.* ¶ 15.)

4

Hanson then filed petition for review, which the Wisconsin Supreme Court granted. (*Id.*) Before the supreme court, Hanson again argued that his Sixth Amendment right to confrontation was violated when the circuit court admitted portions of his John Doe testimony into evidence at trial and that his trial counsel was ineffective for failing to object to the admission of his John Doe testimony on the grounds that he was not read all of the *Miranda* warnings. (*Id.* ¶ 16.) The supreme court rejected Hanson's claims and affirmed the judgment of conviction. Regarding his Confrontation Clause claim, the supreme court found that pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), the right to confrontation only covers hearsay statements offered in evidence to prove the truth of the matter asserted. (*Id.* ¶ 19.) The challenged testimony read to the jury from the John Doe hearing was as follows:

> SPECIAL PROSECUTOR: Did you ever talk to your wife Kathy about Chad McLean's death?
>
> THE DEFENDANT: Well, of course. We talked about it a lot.
>
> SPECIAL PROSECUTOR: Okay. And at times Kathy confronted you and said you were responsible for Chad McLean's death?
>
> THE DEFENDANT: No. She didn't do that until she was trying to put me away before she died.
>
> SPECIAL PROSECUTOR: Okay. But regardless of the timing, at some point Kathy Hanson confronted you and said you were responsible for Chad McLean's death?
>
> THE DEFENDANT: Not to my face she didn't. She went to the police.

> SPECIAL PROSECUTOR: At some point within the year before she passed away, isn't it a fact that Kathy confronted you about the Chad McLean death?
>
> THE DEFENDANT: No. She never—we didn't talk about it anymore. It wasn't until she kept trying to put me in jail for little stuff through my probation officer that then all the sudden she went to the police and accused me of—that she thought that I killed Chad McLean.
>
> SPECIAL PROSECUTOR: But specifically she was telling people that you had shot Chad McLean?
>
> THE DEFENDANT: Well, not that I know of.
>
> SPECIAL PROSECUTOR: Well—
>
> THE DEFENDANT: She told the police.
>
> SPECIAL PROSECUTOR: Who told you that she was saying that you killed Chad McLean?
>
> THE DEFENDANT: [Detective Darren] Laskowski.
>
> SPECIAL PROSECUTOR: Question, have you ever told anybody that her dying was the best thing that ever happened to you?
>
> THE DEFENDANT: Yeah.
>
> SPECIAL PROSECUTOR: How many people have you told that to?
>
> THE DEFENDANT: A couple.

(*Id.* ¶ 20.) The supreme court found that Hanson's John Doe testimony presented three layers of out-of-court statements: (1) Hanson's statement made at the John Doe hearing about what Detective Laskowski told him; (2) Detective Laskowski's statement to Hanson

6

about what Kathy told him; and (3) Kathy's statement to Detective Laskowski that Hanson killed McLean. (*Id.* ¶ 21.)

The court noted that the first layer was not at issue because the parties agreed that Hanson's statement was an admission by a party opponent and thus was not hearsay. (*Id.*) As to the second and third layers, the State argued that Detective Laskowski's statement was not offered for the truth of whether Kathy actually told him that Hanson killed McLean; but, rather, to show Hanson's belief that Kathy would testify against him. (*Id.* ¶ 23.) The State argued that this statement, coupled with Hanson's statement that Kathy's death was the "best thing that ever happened" to him, created an inference that Hanson was glad Kathy was dead so that she could not testify that he killed McLean. (*Id.*) The State further argued that it was irrelevant whether Kathy actually made a statement to Detective Laskowski. (*Id.*)

The supreme court accepted the State's proffered purpose for Detective Laskowski's statement, finding that a jury could infer that Hanson said that Kathy's death was the best thing that ever happened to him because he had heard from Detective Laskowski that she might be a witness against him in McLean's murder. (*Id.* ¶ 26.) The court found this same rationale applied to Kathy's statement to Detective Laskowski, because whether she actually told him Hanson confessed to her was discrete from Hanson's belief that she would testify against him. (*Id.*) Thus, the supreme court found a legitimate non-hearsay purpose for the admission of Hanson's John Doe testimony: consciousness of guilt. (*Id.*) The supreme court found that Hanson's Sixth Amendment right to confrontation was not violated because his

7

John Doe testimony was not hearsay and the Confrontation Clause does not apply to nonhearsay statements. (*Id.* ¶ 27.)

As to Hanson's ineffective assistance of counsel claim, the supreme court found that at the time of the John Doe proceedings, the law was unsettled as to whether *Miranda* applied to such proceedings and ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue. (*Id.* ¶¶ 28–29.) Considering the matter of first impression, then, the supreme court determined that *Miranda* warnings are not required at John Doe proceedings, likening them to federal grand jury proceedings, which do not require *Miranda* warnings for witnesses. (*Id.* ¶¶ 30–31.)

Hanson timely filed this petition for a writ of habeas corpus on January 8, 2020. (Docket # 1.) Hanson raises the two grounds for relief raised before the state courts: (1) that the admission of his deceased wife's statement at trial violated his Sixth Amendment right to confrontation and (2) that trial counsel was ineffective for failing to object to the admission of his John Doe testimony on the grounds that he was not read all of the *Miranda* warnings. (*Id.*)

## STANDARD OF REVIEW

Hanson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

8

Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the

9

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

As stated above, Hanson raises two grounds for relief in his habeas petition: (1) violation of his Sixth Amendment right to confrontation by the admission of his deceased wife's statement and (2) ineffective assistance of counsel when trial counsel failed to challenge the admission of his un-*Mirandized* statements from the John Doe hearing. (*Id.*) I will address each argument in turn.

1. *Confrontation Clause Claim*

Hanson argues that his Sixth Amendment right to confrontation was violated when the State read excerpts from the John Doe hearing transcript at trial, including statements from his late wife Kathy that she confronted Hanson regarding McLean's murder and Hanson said that he was responsible for the murder. (Docket # 1 at 6–7.)

The Sixth Amendment ensures that an accused maintains "the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI. However, this right under the confrontation clause is limited to evidence that is "testimonial." *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014). "The [Confrontation] Clause also does not bar the use of

10

testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). As the Seventh Circuit articulated, "a crucial aspect of *Crawford* is that it only covers hearsay, i.e., out-of-court statements 'offered in evidence to prove the truth of the matter asserted.'" *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) (quoting Fed. R. Evid. 801)). "Thus, to restate, *Crawford* only covers testimonial statements proffered to establish the truth of the matter asserted." *Id.*

As stated above, a writ of habeas corpus is only appropriate when the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The Supreme Court in *Crawford* held that the confrontation right attaches to testimonial hearsay. Hearsay means a "statement" that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Thus, an out-of-court statement offered into evidence for some purpose *other* than to prove the truth of the matter asserted is not hearsay and not subject to the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9.

Citing this law from *Crawford*, the Wisconsin Supreme Court held that Hanson's confrontation rights were not implicated because neither statement at issue (Kathy's or Detective Laskowski's) was admitted to prove the truth of the matter asserted in the

11

statements. (Docket # 12-12 at ¶¶ 19, 26.) As to Detective Laskowski's statement that Kathy told him Hanson killed McLean, the supreme court found that the statement was not offered for the truth of whether Kathy actually told Detective Laskowski that Hanson killed McLean, but was used to show Hanson's belief that Kathy would testify against him. (*Id.* ¶ 23.) The court concluded that this statement, coupled with Hanson's statement that Kathy's death was the "best thing that ever happened" to him, created a reasonable inference that Hanson was glad Kathy was dead so that she could not testify against him, evidencing a consciousness of guilt. (*Id.* ¶¶ 23, 26.) The supreme court found that the same rationale applied to Kathy's statement to Detective Laskowski, stating that whether Kathy actually told Detective Laskowski that Hanson confessed to her was irrelevant and the statement goes to Hanson's consciousness of guilt. (*Id.*)

The supreme court's analysis of Hanson's John Doe testimony was neither contrary to nor an unreasonable application of *Crawford*. First, the supreme court correctly cited to *Crawford* that "the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (Docket # 12-12 at ¶ 19, quoting *Crawford*, 541 U.S. at 59 n.9.) Then, the Wisconsin Supreme Court applied this law and determined that the statements at issue were not offered to prove the truth of the matter asserted; but were admitted to demonstrate Hanson's consciousness of guilt. (*Id.* ¶¶ 26–27.) Even assuming, *arguendo*, that I disagreed with the supreme court's analysis finding Kathy's and Detective Laskowski's statements admissible to show Hanson's consciousness of guilt, it was not an unreasonable application of *Crawford.* To obtain habeas relief, Hanson would

12

need to show that the supreme court was not only wrong, but also unreasonable in its application of *Crawford*. *See Washington*, 219 F.3d at 627. He has failed to make this showing.

Additionally, even assuming that the supreme court erred in its determination that Hanson's John Doe statement was not hearsay and therefore did violate the Confrontation Clause, a federal court may grant habeas relief only if a constitutional error caused the petitioner's custody. *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). As the court in *Aleman* explained:

> Whether a given prisoner's custody violates the Constitution, laws, or treaties of the United States depends, first, on whether all substantive rules have been respected (the merit of the claim) and, second, on whether any error *caused* the custody. That is where *Brecht*'s [*v. Abrahamson*, 507 U.S. 619 (1993)] harmless-error doctrine enters; a harmless error did not play a causal role and thus does not justify collateral relief. Nothing in the AEDPA suggests that it is appropriate to issue writs of habeas corpus even though any error of federal law that may have occurred did not affect the outcome.

*Id.* (emphasis in original). When reviewing a state-court judgment in a habeas corpus proceeding, the court asks whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Rhodes v. Dittmann*, 903 F.3d 646, 665 (7th Cir. 2018). "To answer that question in a Confrontation Clause case, we consider a variety of factors, such as 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Id.* at 666 (internal citation omitted).

13

Here, Hanson's John Doe testimony about Kathy's statement to the police aside, the jury heard more detailed and incriminating evidence from other witnesses independent of the John Doe testimony. Most strikingly, the jury heard testimony from three witnesses to whom Hanson confessed to McLean's murder. Hanson's friend O'Connor testified that Hanson told him that: he had accidentally killed somebody; that Hanson's wife saw he had blood on his hands and was "freaking out"; that Hanson told his wife that he killed somebody; and that Hanson and "Chuck" got rid of the body in the river by his house. (Answer, Ex. 24, Transcript of Dec. 6, 2013 Jury Trial, Docket # 12-24 at 25, 28–29.) Similarly, Hudson, who described he and Hanson as the "best of friends for over twenty-some years" (*id.* at 168), testified that approximately a month and a half after McLean's body was found, Hanson told him that he shot McLean and put his body in the river (*id.* at 158, 162–63, 167–68). Finally, Dey, who Hanson met while incarcerated at the Oconto County Jail after his arrest, similarly testified that Hanson told him that he shot McLean and that "[h]im and his buddy brought the body upstream and it floated back down towards his house." (*Id.* at 114.) Dey further testified that Hanson told him that Kathy was around at the time of the murder and that she "made a statement to the cops against him about it." (*Id.* at 116–17.)

In addition to these witnesses' testimony, the State put forth evidence showing that McLean was last seen alive with Hanson (Answer, Ex. 23, Transcript of Dec. 5, 2013 Jury Trial, Docket # 12-23 at 256) and despite telling police that he dropped McLean off at a restaurant and truck stop in Abrams (Answer, Ex. 22, Transcript of Dec. 4, 2013 Jury Trial,

14

Docket # 12-22 at 266–67), surveillance camera footage did not show McLean at the truck stop at any time on the day in question (Docket # 12-23 at 130–33; Docket # 12-22 at 247–55). Furthermore, Hanson's neighbor heard gunshots soon after McLean and Hanson left the Byng house together (Docket # 12-23 at 196–98) and McLean's body was found in the Pensaukee River approximately one mile from Hanson's property (Docket # 12-22 at 280, 309–310).

In addition to this evidence, the evidence showed that McLean's gunshot wounds were consistent with having been fired by a fully-automatic, .22 caliber gun, a weapon that is legally restricted and rare outside of the military, but Hanson happened to possess one. (Docket # 12-23 at 71, 80–81, 215–217, 272; Docket # 12-24 at 74–75, 214–16.) Furthermore, officers found an empty box of .22-caliber ammunition in the storage shed on Hanson's property, as well as spent .22-caliber shell casing and fired .22-caliber bullets in Hanson's yard. (Docket # 12-22 at 289, 293–94.)

Given the strength of the prosecution's case against Hanson, any error in admitting the John Doe testimony was harmless, as he cannot show that the admission of the John Doe testimony had a substantial and injurious effect on the jury's verdict. For these reasons, habeas relief is not warranted on this ground.

2. *Ineffective Assistance of Counsel*

Hanson further argues that his trial counsel was ineffective for failing to object to his John Doe testimony admitted at trial due to the John Doe judge's failure to advise him of his complete *Miranda* rights. (Docket # 1 at 7.) Claims for ineffective assistance of counsel

15

are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Hanson must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690.) "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome."

16

*Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Hanson cannot show that the supreme court's decision contravenes *Strickland*. The Wisconsin Supreme Court found that the issue of whether *Miranda* warnings were required for all witnesses at a John Doe hearing was unsettled law at the time of Hanson's proceedings, and the court concluded that failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services outside the wide range of professionally competent assistance sufficient to satisfy the Sixth Amendment. (Docket # 12-12 at ¶ 28.) Hanson has not demonstrated that this conclusion contravenes clearly established federal law as determined by the Supreme Court. In fact, this conclusion is consistent with federal law. *See Resnick v. United States*, 7 F.4th 611, 623 (7th Cir. 2021) ("[O]ur case law provides that failure to object to an issue that is not settled law within the circuit is not unreasonable by defense counsel."); *Tucker v. United States*, 889 F.3d 881, 885 (7th Cir. 2018) ("[W]e have held that a failure to anticipate a change or advancement in the law does not qualify as ineffective assistance.").

Furthermore, when the Wisconsin Supreme Court did consider this issue of first impression, the court concluded that witnesses at John Doe proceedings are not subject to custodial interrogation and thus are not entitled to *Miranda* warnings. (Docket # 12-12 at ¶¶ 31–35.) In so finding, the supreme court addressed at length the United States Supreme

17

Court's precedent on grand jury proceedings, which the court found similar to John Doe proceedings. (*Id.* ¶ 31.) In those cases, the Supreme Court has found that grand jury proceedings do not amount to custodial interrogation and thus *Miranda* warnings are not required for witnesses. (*Id.* ¶¶ 31–33.) Thus, Hanson's trial counsel was not ineffective for failing to object to testimony on *Miranda* ground when no *Miranda* warnings were required in the first place. For these reasons, Hanson is not entitled to habeas relief on ground two of his petition.

In conclusion, Hanson has not demonstrated that the Wisconsin Supreme Court contravened established Supreme Court law. As such, his petition for a writ of habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

18

Jurists of reason would not find it debatable that Hanson is not entitled to habeas relief. Thus, I will deny Hanson a certificate of appealability. Of course, Hanson retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of May, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge